UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRUCE A. POINTER, Sr., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Case No. 08-0247 (RJL)<br>) |
| DISTRICT OF COLUMBIA, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

MEMORANDUM OPINION
(September 5, 2010) [#24]

Bruce A. Pointer, Sr., and his wife Pierrette M. Pointer, (collectively, "plaintiffs") filed this action against the District of Columbia ("the District") and George L. O'Bryant ("Sergeant O'Bryant" or "O'Bryant"), a sergeant with the Metropolitan Police Department ("MPD") (collectively, "defendants"), in the Superior Court of the District of Columbia on November 15, 2007. Plaintiffs alleged violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), as well as the common law torts of assault, false arrest, false imprisonment, and intentional infliction of emotional distress. The case was removed to this Court upon the motion of the defendants on February 13, 2008. Now before the Court is defendants' Motion for Summary Judgment. After careful consideration of the pleadings, the relevant law, and the entire record, the Court GRANTS the defendants' motion.

1

## BACKGROUND

On November 16, 2006, plaintiffs and their son were returning home from dinner in their vehicle when they were stopped by Sergeant O'Bryant by the intersection of 25th Street and Good Hope Road. Compl. ¶9; Def.'s Stmt of Facts ("Def. Stmt") ¶1. Sergeant O'Bryant told Mr. Pointer, who was driving the vehicle, that he was being pulled over for running a red light and asked to see Mr. Pointer's license. Def. Stmt ¶¶2-3; Bruce Pointer Dep. 11:5-10, May 12, 2009. Mr. Pointer gave Sergeant O'Bryant his commercial driver's license. Pl.'s Stmt of Facts ("Pl. Stmt") ¶5; Def. Stmt ¶4. Sergeant O'Bryant returned to his patrol car to verify that the license was valid; however, it was reported as "disqualified." Pl. Stmt ¶¶5-6; Def. Stmt ¶¶5-6; George O'Bryant Dep. 11:13-20, May 12, 2009. Sergeant O'Bryant then radioed into MPD's dispatch unit and asked that a second search of Mr. Pointer's license be conducted. Def. Stmt ¶7; Pl. Stmt ¶7. Shortly thereafter, dispatch confirmed that Mr. Pointer's commercial license was disqualified. Def. Stmt ¶7; Pl. Stmt ¶7. By this time, MPD assistance had arrived. O'Bryant Dep. 12:9-10.

Sergeant O'Bryant then returned to plaintiffs' vehicle and advised Mr. Pointer that his license was not valid. *Id.* 12:11-14. He asked Mr. Pointer to step out of the vehicle, and arrested him for "No DC Permit." Def. Stmt ¶8; Pl. Stmt ¶8. Typically, MPD officers arrest motorists when their licenses are deemed invalid. O'Bryant Dep. 24:3-5. According to plaintiffs, in placing Mr. Pointer under arrest, Sergeant O'Bryant kicked Mr. Pointer's legs apart, tightly handcuffed his wrists, snatched the string from Mr. Pointer's hood and boots, and took his belt. Pl. Stmt. ¶8; B. Pointer Dep. 17:1-14. Mr.

2

Pointer was then taken to the police station, where he was held for approximately 45 minutes to an hour. *Id.* 22:11-12; 23:22.

Meanwhile, after Mr. Pointer was arrested, Mrs. Pointer was asked by a second police officer who had arrived at the scene if she had a driver's license. Pierrette Pointer Dep. 13:1-4;16:18-19, May 12, 2009; Def. Stmt ¶11; Pl. Stmt ¶11. Since she did not, the police officer drove the Pointers' car to the police station, leaving Mrs. Pointer and her son at the arrest location. Def. Stmt ¶12; P. Pointer Dep. 16:16-17. Mrs. Pointer called her mother to pick her and her son up, and together they traveled to the police station where Mr. Pointer was being held. P. Pointer Dep. 18:2-14; Def. Stmt ¶13. Mrs. Pointer, her son, and her mother waited approximately two hours, and then left the station with Mr. Pointer. P. Pointer Dep. 18:10-20; Pl. Stmt ¶14.

The next morning, Mr. Pointer went to the Department of Motor Vehicles ("DMV") and was told that his commercial license was disqualified only because the DMV required submission of Mr. Pointer's medical records, which he had not yet done. B. Pointer Dep. 27:3-21; 30:1-7. Mr. Pointer received a clearance letter from the DMV stating that his license was valid and that there were no suspensions or revocations against his record. Compl. ¶12. That same morning, Sergeant O'Bryant was told by the Attorney General's Office that a disqualified commercial license, while not valid for the operation of a commercial vehicle, is nevertheless valid for operation of a passenger vehicle. O'Bryant Dep. 16:1-11. The license-related charge against Mr. Pointer was thus no-papered. Compl. ¶12. Mr. Pointer was never cited for failure to stop at the red light. Pl.'s Opp'n 5.

3

## ANALYSIS

Summary judgment is appropriate where the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In opposing a motion for summary judgment, the non-movant "may not rely merely on allegations or denials in its own pleading; rather, its response must— by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56 (e)(2). Though the Court must draw all justifiable inferences in favor of the non-moving party in deciding whether there is a disputed issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### 1. Constitutional Claims against the District

Plaintiffs seek to hold the District liable for Sergeant O'Bryant's alleged violations of their Fourth and Fourteenth Amendment rights under Section 1983. However,

4

plaintiffs' constitutional claims against the District must fail for two reasons. First, the Fourteenth Amendment is not applicable to the actions of the District or its officials or employees. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1953). Thus, plaintiffs' Fourteenth Amendment claim against the District must fail.

Second, as for plaintiffs' Fourth Amendment claim, plaintiffs have failed to demonstrate that their injuries resulted from a policy, custom, or practice of the District. A municipality cannot be held liable under Section 1983 for the torts of its employees under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality can only be liable under Section 1983 if the allegedly unconstitutional action results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694. Plaintiffs have neither pled, nor proven, that Sergeant O'Bryant's actions were the execution or implementation of an official policy or custom of the District. Accordingly, their claim must fail on that basis.

Plaintiffs' pleadings could be construed to contain the claim that their injuries resulted from a failure to train police officers to "ask [] questions to remedy their lack of knowledge." Pl.'s Opp'n 8. However, a claim against a municipality for failing to train its police officers can only survive "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). To say the least, plaintiffs have put forth no evidence to demonstrate that the circumstances that gave rise to the instant action were the result of a city training policy and not the mistake of the individual officer. *See id.* at 390-91 ("That

5

a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Accordingly, plaintiffs' Fourth Amendment claims against the District would also fail under this theory.

### 2. Constitutional Claims against Sergeant O'Bryant

Plaintiffs also seek to hold Sergeant O'Bryant *personally* liable for the alleged constitutional violations under Section 1983.[1] However, it is well-established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). As its name implies, qualified immunity serves as an "immunity from suit rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted)).

---

[1] The Court finds that the Section 1983 claim against Sergeant O'Bryant in his *official* capacity fails for the same reasons as those against the District. Indeed, plaintiffs concede that because their claims against O'Bryant in his official capacity "are identical to Plaintiffs' claims against the District, those claims can be considered merged and joined for the sake of efficiency." Pl.'s Opp'n 13; *see Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir.1996) ("When sued in their official capacities, government officials are not personally liable for damages. A section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

In determining whether an official is entitled to qualified immunity, the District Court must resolve two inquires: whether "the facts alleged show the officer's conduct violated a constitutional right" and "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009). In order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 129 S. Ct. at 815 (quotation omitted).

Plaintiffs' Section 1983 claims against Sergeant O'Bryant arise from his allegedly unconstitutional arrest of Mr. Pointer in violation of Mr. Pointer's Fourth Amendment rights.[2] Pl.'s Opp'n 12. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. amend IV. Though Mr. Pointer's arrest constitutes a "seizure" of "person" within the ambit of the Fourth Amendment (*see, e.g., Whren v. United States*, 517 U.S. 806, 809-10 (1996) (citations omitted)), "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Here, Sergeant O'Bryant's

---

[2] As best the Court can discern from plaintiffs' pleadings, plaintiffs' Fourth Amendment claim is that Sergeant O'Bryant "deliberately proceeded with the arrest of Mr. Pointer, in flagrant disregard of liberty rights . . ." Pl.'s Opp'n 12.

arrest did not violate plaintiffs' Fourth Amendment rights because he had the requisite probable cause.

Probable cause exists when, at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Here, Sergeant O'Bryant performed a routine traffic stop when he believed he saw Mr. Pointer run a red light.[3] O'Bryant Decl. ¶¶4-5. His check of Mr. Pointer's license revealed that the license was "disqualified"; when he asked his dispatch unit to perform a second search, the result was confirmed. *Id.* ¶¶10-11. Believing that Mr. Pointer had violated the District of Columbia traffic code, Sergeant O'Bryant placed Mr. Pointer under arrest. *See* D.C. Code §50-1403.01(e) ("Any individual found guilty of operating a motor vehicle in the District during the period for which the individual's license is revoked or suspended, or for which his right to operate is suspended or revoked, shall, for each such offense, be fined not to exceed $5,000 or imprisoned for not more than 1 year, or both."); O'Bryant Decl. ¶12. Although he was mistaken as to whether a disqualified commercial license was valid for the operation of a passenger vehicle, the facts and circumstances

---

[3] Plaintiffs contend that the light was green and that the initial traffic stop was improper. Pl. Stmt ¶1; P. Pointer Dep. 9:19-22. Even if the jury were to agree with them, however, the arrest in question was based on the officer's evaluation of the plaintiff's invalid commercial license, not on his failure to stop at the traffic light. Simply stated, although a pretextual traffic stop may be the grounds to suppress an automobile or personal *search* that followed, it is not reason enough alone to defeat a motion for summary judgment under circumstances where the officer had a legitimate basis to subsequently arrest the driver.

within Sergeant O'Bryant's knowledge at the time of the arrest were sufficient to give him the necessary probable cause to effectuate an arrest. Accordingly, because the facts fail to show a constitutional violation, Sergeant O'Bryant is protected by qualified immunity. The fact that he was later shown to be mistaken does not negate his grant of qualified immunity.

3. **Common Law Claims**

Plaintiffs bring three common law claims against Sergeant O'Bryan: assault, false arrest, and false imprisonment.[4]

*a. Assault*

Plaintiff alleges that Sergeant O'Bryant, through his actions at the arrest, "caused the Plaintiff[] to have fear and apprehension of unlawful, unjustified touching or contact," and as a result, "Plaintiff[] suffered fright, shame, mortification from indignity and disgrace, loss of self-esteem and continue to suffer psychological, mental and emotional distress." Compl. ¶¶20-21. A claim for assault must involve an "'intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff.'" *District of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003) (quoting *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997)). A defendant must have intended "to cause in the plaintiff an apprehension of a battery." *Sabir v. District of Columbia*, 755

---

[4] Though their complaint originally alleged intentional infliction of emotional distress, plaintiffs voluntarily withdrew this claim. Pl.'s Opp'n 13. The Court also finds that plaintiff Pierrette Pointer has failed to state any claims for which she is entitled to relief from defendants. She was not placed in fear of battery or physical harm from defendants, nor was she arrested. Accordingly, the common law claims are analyzed with respect to Mr. Pointer only.

A.2d 449, 452 (D.C. 2000) (quotation omitted). But, a "police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (citation omitted); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) (the Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968))). Accordingly, an officer may defend a claim of assault "by proof that only reasonable force was used to maintain the arrest and that the arrest was made in good faith, with probable cause, under a statute he reasonably believed to be valid." *Wade v. District of Columbia*, 310 A.2d 857, 862 (D.C. 1973) (en banc).

As discussed above, Sergeant O'Bryant arrested Mr. Pointer in good faith, reasonably believing, based on his own search and his dispatch unit's subsequent search, that Mr. Pointer lacked a valid passenger vehicle license. Taking all inferences in the light most favorable to the plaintiff, Sergeant O'Bryant kicked Mr. Pointer's feet apart, handcuffed him tightly, and snatched the strings from his clothing and his belt. Pl. Stmt. ¶8; B. Pointer Dep. 17:1-14. There is nothing in the record to indicate that Sergeant O'Bryant's use of force was unreasonable or that it exceeded the boundaries on his right to use force to effect the arrest. Therefore, plaintiff's assault claim must fail.

### b. False Arrest and False Imprisonment

Plaintiff also alleges that his arrest and subsequent detention at the police station constitute a false arrest and false imprisonment.[5] Compl. ¶¶23, 26. "In actions for false arrest and false imprisonment, the central issue is 'whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails.'" *Scott v. District of Columbia*, 493 A.2d 319, 321 (D.C. 1985) (citing *Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977)). "To determine whether the arresting officer had probable cause or a good faith belief, the court evaluates the evidence from the perspective of the officer, not the plaintiff." *Moorehead v. District of Columbia*, 747 A.2d 138, 147 (D.C. 2000) (citations omitted). Thus, even if an arrest lacks *actual* probable cause, "a false arrest claim can be defeated . . . if the defendant officers had merely a reasonable, good faith belief that probable cause existed." *Lisner v. Smith*, 254 F. Supp. 2d 89, 98 (D.D.C. 2003). "The issue of probable cause for false arrest is a mixed question of law and fact. Where the facts are in dispute, the issue of probable cause is for the jury, but where the facts are undisputed or clearly established, a question of law arises for the court." *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 862 (D.C. 1982) (citations omitted).

---

[5] Because the elements of the torts of false arrest and false imprisonment are the same, the Court will address them as if they were one count of the complaint even though plaintiffs list them as two. *See, e.g., Jackson v. District of Columba*, 412 A.2d 948, 954 (D.C. 1980) ("In this jurisdiction the gist of a complaint for false arrest or false imprisonment is an unlawful detention." (citing *Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978))).

The only aspect of Mr. Pointer's arrest that the plaintiffs contend is in dispute is whether or not the arrest was made with probable cause. *See* Pl. Stmt ¶¶8, 9, 12. Thus, because the facts are not in dispute, the question of probable cause is a question of law within the province of the Court. In this case, because Sergeant O'Bryant reasonably believed that Mr. Pointer was operating his vehicle without a valid license, the Court finds that Sergeant O'Bryant reasonably believed he had probable cause for the arrest, and that plaintiff's claims for false arrest and false imprisonment must therefore fail.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment [#24]. An order consistent with this memorandum opinion is attached herewith.

RICHARD J. LEON
United States District Judge